UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANITA STRADLEY,<br><br>              Petitioner,<br><br>      v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security<br>Administration,<br><br>              Respondent. | Case No. 1:16-cv-00423-EJL-CWD<br><br>**REPORT AND<br>RECOMMENDATION** |

## INTRODUCTION

Currently pending before the Court is Anita Stradley's Petition for Review of the

Respondent's denial of social security benefits, filed on September 20, 2016. (Dkt. 1.)[2]

The Court has reviewed the Petition for Review and the Answer, the parties' memoranda,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Petitioner actually filed a complaint. However, in the District of Idaho, the Court construes all initial pleadings in social security disability appeals as petitions for review.

**REPORT AND RECOMMENDATION - 1**

and the administrative record (AR), and for the reasons that follow, will recommend that the Court remand the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title II application for a period of disability and disability insurance benefits, and also protectively filed a Title XVI application for supplemental security income, on April 5, 2013. These applications were denied initially and on reconsideration, and a hearing was held on February 13, 2015, before Administrative Law Judge (ALJ) Luke Brennan. After hearing testimony from Petitioner and a vocational expert, ALJ Brennan issued a decision on March 30, 2015, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on July 18, 2016.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of January 1, 2013, Petitioner was forty-four years of age.[3] Petitioner completed the eleventh grade, and her prior work experience includes work as a customer service representative and as a collections manager.

---

[3] The ALJ incorrectly indicated Petitioner was 43 years of age. (AR 24.) However, there is no harmful error, as Petitioner still qualified as a younger individual under age 50. 20 C.F.R. § 404.1563(c).

**REPORT AND RECOMMENDATION - 2**

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of January 1, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's fibromyalgia, degenerative disc disease, idiopathic transverse myelitis, and loss of voice severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for any listed impairment, specifically considering Petitioner's fibromyalgia under Listing 1.02 (major dysfunction of a joint); back impairment under Listing 1.04 (disorders of the spine); and transverse myelitis under Listing 11.00 (neurological disorders). The ALJ determined none of Petitioner's impairments met or equaled the criteria for the listed impairment considered.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible.

**REPORT AND RECOMMENDATION - 3**

Here, in formulating Petitioner's RFC, the ALJ reconciled the various medical source opinions. He considered the statements of the state agency medical consultants, Drs. Vestal and Song, giving their opinions partial weight. Next, the ALJ considered the opinions of Dr. John Casper, a consultative examiner, giving his opinion great weight. And finally, the ALJ gave treating physician Dr. Bill Laitinen's opinion partial weight. Also considered was Jon Perry, PA-C's opinion. The ALJ gave his opinion partial weight.

Based upon the ALJ's assessment of the medical evidence in the record, the ALJ found Petitioner retained the residual functional capacity for sedentary work, with the following limitations: lift and carry twelve pounds occasionally and eight pounds frequently; stand or walk for ten minutes continuously, two hours out of an 8-hour day, with unlimited sitting; and perform occasional job tasks requiring speaking.

The ALJ found Petitioner had past relevant work as a customer service representative and a collections manager, but was unable to perform those occupations due to her impaired speaking ability and restrictions upon standing and walking. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative occupations such as document preparer, final assembler

**REPORT AND RECOMMENDATION - 4**

(optical), and stuffer. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552,

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**REPORT AND RECOMMENDATION - 6**

## DISCUSSION

Petitioner contends the ALJ erred at step four and fashioned a residual functional capacity that did not reflect the limitations described by her treating physicians. Specifically, Petitioner focuses upon the ALJ's evaluation of the opinions expressed by Drs. Caspser, Vestal, Song, and Laitinen, as well as Jon Perry, PA-C.

The United States Court of Appeals for the Ninth Circuit Court distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to a nontreating physician. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

The ALJ need not accept the opinion of any physician if the opinion is brief,

**REPORT AND RECOMMENDATION - 7**

conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

## 1.    Dr. Laitinen

Dr. Laitinen completed a RFC questionnaire on November 14, 2014, after Petitioner recently had established care with him. (AR 909 – 910.) Dr. Laitinen diagnosed Petitioner with fibromyalgia, depression, and chronic pain syndrome, which resulted in symptoms of pain, fatigue, dizziness, and blurred vision. Additionally, Dr. Laitinen noted Petitioner's medication caused drowsiness. In Dr. Laitinen's opinion, Petitioner would need more than the typically provided number of work breaks, she was limited to sitting and standing no more than one hour each in a typical 8-hour work day, and she would miss work more than four times each month. In Dr. Laitinen's opinion, Petitioner was not physically capable of working on a full-time, sustained basis.

The ALJ gave Dr. Laitinen's opinion partial weight, on the grounds that no

**REPORT AND RECOMMENDATION - 8**

explanation was given for the limitations assigned, specifically the combined sit/stand restriction of two hours in an 8-hour day or Petitioner's expected absenteeism. Additionally, the ALJ noted the consultative examination of Dr. Casper showed no difficulty with gait or rising from a seated position. (AR 22-23.) Petitioner contends the ALJ erred, because the extensive treatment notes of other physicians, combined with Dr. Laitinen's treatment notes, provided substantial evidence for his opinions, and the ALJ's reasons were neither specific nor legitimate.

Turning to Dr. Laitinen's medical records, they show Petitioner established care at Nampa Medical Center[4] on March 13, 2014, and first saw Jon Perry, PA-C. (AR 887.) Petitioner complained of chronic, constant pain, rated her pain at "level 5," and described it as "aching." (AR 888.) Perry diagnosed fibromyalgia. (AR 890.) Petitioner's next office visit was on April 1, 2014, and she again saw Perry. (AR 882.) Petitioner rated her pain level at an intensity of 6, and indicated pain "all over." (AR 883.) Petitioner's medications were continued. (AR 885-86.) Perry again saw Petitioner on May 2, 2014, (AR 876), and her medications to treat fibromyalgia pain were continued. (AR 879.) On May 16, 2014, Perry again saw Petitioner. (AR 871.) Perry noted Petitioner was unable to tolerate her most recent medications (Norco, Oxycodone), and he prescribed fentanyl patches for pain. (AR 871.) Perry noted he was working on obtaining pain control for Petitioner. (AR 874.)

---

[4] Dr. Laitinen, Jon Perry, PA-C, and Kara Williamson, FNP, were part of the practice group at Nampa Medical Center located in Middleton, Idaho.

**REPORT AND RECOMMENDATION - 9**

On June 16, 2014, at a follow up visit, Perry noted Petitioner was tolerating the low dose hydromorphone, and he decided to continue the medication to treat Petitioner's pain. (AR 865.) Perry noted Petitioner's pain was stable on the current medication regimen. (AR 866.) On June 30, 2014, Perry decided to increase Petitioner's dose of hydromorphone to address Petitioner's complaints of worsening pain. (AR 860.) At that visit, Petitioner complained of muscle cramps, back pain, and muscle weakness. (AR 862.) On July 16, 2014, Perry noted Petitioner's pain was not well controlled with her current medications. (AR 855.) He did not change her medications.

Petitioner followed up on August 21, 2014, complaining of worsening pain. (AR 837.) At this visit, Petitioner was seen by Kara Williamson, FNP. Petitioner complained of pain to the touch, but indicated the medications she was currently prescribed helped. Williamson determined Petitioner's chronic pain symptoms had increased. (AR 840.) Petitioner transitioned to Dr. Laitinen's care on September 22, 2014. Dr. Laitinen recounted her past treatment history while in the care of his colleagues at Nampa Medical Center, and he reviewed her medical records in his possession dating from March 13, 2014. (AR 830.) He noted Petitioner recently had been prescribed high doses of oral Dilaudid (Hydromorphone) for pain. (AR 830.) Upon physical examination, Dr. Laitinen noted "multiple tender trigger points. (AR 831.) Dr. Laitinen diagnosed fibromyalgia, and decided to wean Petitioner from Dilaudid and to try an alternative medication to treat Petitioner's pain. (AR 832.)

Petitioner returned to see Dr. Laitinen on October 16, 2014, complaining of

severe, diffuse, and worsening pain. (AR 825.) Physical examination revealed multiple trigger points. (AR 826.) Dr. Laitinen prescribed methadone on a 2-week trial basis. (AR 826.) Petitioner returned for a re-check on October 30, 2014, complaining of worsening pain, "like her skin is burning." (AR 822.) Petitioner rated her pain at an intensity level of 10. (AR 823.) Petitioner continued to see Dr. Laitinen in 2015. (AR 912.)

The ALJ erred in assigning only "partial" weight to Dr. Laitinen's opinions. First, the Court notes the ALJ did not satisfy the "substantial evidence" requirement, because the ALJ did not set out a detailed and thorough summary of the facts and conflicting clinical evidence, but rather produced a blunted summary consisting of one paragraph that the Court had difficulty finding support for in the record. (AR 22.) *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (explaining how the ALJ satisfies the substantial evidence standard). For instance, the ALJ notes Petitioner's complaints of pain were "sporadic," she did not see her doctor for nine months, physical examinations were "normal," and no tender points were noted. (AR 22.)

With that summary, the ALJ concluded Petitioner's "treatment notes, physical examinations, diagnostic testing, consultative report, subjective complaints, and her activities of daily living suggest that her physical impairments are not as severe as she alleged," and cited as support over 300 pages of medical records. (AR 22, citing Exs. 4F-7F, 13F, 20F-22F, and 24F.)[5] Yet, the records of Nampa Medical Center and its treating

---

[5] Exhibit 23F consists of Nampa Medical Center's records, discussed above.

**REPORT AND RECOMMENDATION - 11**

providers Jon Perry, Kerry Williamson, and Dr. Laitinen directly contradict the ALJ's summary of the medical evidence and do not support the ALJ's conclusions of "sporadic" pain complaints, "normal" physical examinations, and the absence of tender points. In fact, just the opposite was noted, as set forth by the Court above.

The ALJ, in other words: (1) completely ignored most treatment records, including Dr. Laitinen's own records and those of his colleagues; (2) failed to recognize that Dr. Laitinen's opinions expressed in the November 14, 2014 RFC questionnaire were based upon not only his experience with Petitioner, but also that of his colleagues,[6] and therefore entitled to more weight than an otherwise unsupported and unexplained check-box form would not merit; (3) he did not explicitly compare Dr. Laitinen's records to other medical evidence; and (4) he did not evaluate Dr. Laitinen's records for internal consistency or inconsistency in his description of Petitioner's symptoms, which if he had, would have noted consistent complaints of pain and use of narcotic medications to control the pain. *See, e.g.*, *Garrison*, 759 F.3d at 1012 (outlining errors committed by the ALJ in that case with regard to evaluation of medical evidence).

Additionally, Petitioner noted that Perry's RFC assessment was consistent with Dr. Laitinen's RFC assessment, yet the ALJ similarly gave conclusory reasons for giving Perry's opinion "partial weight." The ALJ simply dismissed Perry's opinions, finding no

---

[6] Dr. Laitinen indicated he reviewed Petitioner's medical records from the date of her first office visit at Nampa Medical Center on March 14, 2014. Thus, Dr. Laitinen had the benefit of eight months of treatment history.

**REPORT AND RECOMMENDATION - 12**

support for Perry's conclusion regarding Petitioner's absenteeism, and discounting the opinion because Perry had treated Petitioner for only a few months. (AR 22.) However, the ALJ failed to reconcile Perry's opinion with that of Dr. Laitinen, who reviewed Perry's treatment notes when forming his own opinions regarding Petitioner's capacity to perform work. The ALJ's failure in this regard constitutes error.[7]

Finally, it appears the ALJ manufactured a conflict with Dr. Casper's assessment. The consultative examination of Dr. Casper showed Petitioner had no difficulty with gait or rising from a seated position. (AR 22-23.) However, gait simply refers to the manner of walking, not the ability to sustain walking for a period of time over the course of an 8-hour work day. *Gait*, STEDMANS MEDICAL DICTIONARY 359060.[8] And as noted in the next section, although Dr. Casper noted Petitioner was able to rise from a seated position, it was with difficulty. The ALJ therefore created an inconsistency where there was none, which was error.

---

[7] Petitioner alternatively argues the ALJ's finding that the basis of Dr. Laitinen's opinion was unclear obligated the ALJ to contact the physician for further information. While it is true that "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry,'" *Widmark v. Barnhart*, 454 F.3d 1063, (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)), the Court finds it unnecessary to address this argument in light of its discussion above.

[8] For example, a person's gait may be described as antalgic, ataxic, calcaneal, cerebellar, equine, festinating, helicopod, or hemiplegic, among others. These descriptors identify certain mannerisms in the way a person walks, which in turn reflect an underlying disease process or other disorder. *See, e.g., Antalgic Gait*, STEDMANS MEDICAL DICTIONARY 359070 (a characteristic gait resulting from pain on weight-bearing in which the stance phase of gait is shortened on the affected side).

**REPORT AND RECOMMENDATION - 13**

2.      **Dr. John Casper**

Dr. Casper performed a consultative examination on July 12, 2013. (AR 523 – 29.) He assessed Petitioner's range of motion. (AR 526.) Dr. Casper noted Petitioner's joint range of motion was normal, but he did note proximal muscle weakness in the upper and lower extremities. (AR 528.) He noted also "diminished sensation and allodynia on the dorsal lateral aspect of both upper extremities and a generalized decrease in sensory perception to all modalities in a non-neuroanatomic distribution involving the entire lower extremities." (AR 528.) Petitioner's gait was normal, and she was able to rise from a seated position with difficulty. (AR 529.) While she was able to bend at the waist and rise, she could not assume a squatting position. (AR 259.) Dr. Casper's diagnoses included transverse myelitis with residual of weakness and sensory abnormalities, and fibromyalgia, along with several other diagnoses not at issue here. (AR 529.)

Dr. Casper assigned the following limitations: "standing or walking for 10 minutes continuously and 2 hours combined. Occasional lifting and carrying of 12 and 8 pounds, respectively. She is unable to work in a capacity dependent upon speaking." Dr. Casper indicated "limitations are not expected for sitting." (AR 529.) In assigning Dr. Casper's opinion "great weight," the ALJ simply explained, "it is consistent with the record as a whole and considered all her current impairments." (AR 22.)

Petitioner argues the ALJ's adoption of Dr. Casper's opinion contradicts the RFC assessment. Petitioner asserts Dr. Casper clearly indicated Petitioner was limited to lifting 12 pounds occasionally and carrying 8 pounds occasionally, yet the ALJ's RFC indicated

**REPORT AND RECOMMENDATION - 14**

Petitioner could both lift and carry 12 pounds occasionally and 8 pounds frequently. Petitioner cites SSR 83-10 for support. Respondent argues the ALJ simply chose not to adopt the opinion regarding lifting and carrying.

First, the ALJ's evaluation of Dr. Casper's opinion is entirely conclusory. He offers neither specific nor legitimate reasons for his determination (other than a conclusory statement) why this medical opinion is more persuasive, cited to no medical records that would support his conclusion, and simply used boilerplate language that fails to offer a substantive basis for his conclusion. *C.f. Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Second, Respondent's argument that the ALJ chose to reject the lifting and carrying restrictions is without merit. The ALJ offered no explanation for his deviation from Dr. Casper's lifting and carrying restrictions, despite giving the opinion "great weight." The Court finds the error significant, because sedentary work is defined as work that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); SSR 83-10. The Dictionary of Occupational Titles defines sedentary as "exerting up to 10 pounds of force occasionally." The ALJ's RFC, which indicated Petitioner could lift and carry 12 pounds occasionally and 8 pounds frequently, was propounded to the vocational expert as

**REPORT AND RECOMMENDATION - 15**

a hypothetical. However, it exceeds the exertional capacity for sedentary work, and it is unclear if the vocational expert would have given a different opinion had Dr. Casper's exact limitations been proffered with the RFC hypothetical. (AR 63-64.)

### 3.    Drs. Vestal and Song

Both Drs. Vestal and Song are state agency physicians. Dr. Song opined Petitioner retained the RFC to occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk 6 hours in an 8-hour work day, and sit about 6 hours in an 8-hour work day. (AR 103-104.) Dr. Song indicated also that Petitioner had manipulative limitations due to limited feeling in her skin receptors, citing Dr. Casper's findings of diminished sensation and allodynia dorsal lateral aspect of both upper extremities. (AR 104-105.) Dr. Vestal's opinion was substantially the same as Dr. Song's opinion, including the reference to Dr. Casper's findings which would inhibit Petitioner's ability to manipulate objects. (AR 75.)

The ALJ gave the doctors' opinions "partial weight," because they were "somewhat inconsistent with the treatment notes, consultative report, physical exams, diagnostic testing, and her subjective complaints, as discussed above." (AR 22.)[9]

At the hearing, the vocational expert was asked whether a person limited to lifting and carrying 12 pounds occasionally, 8 pounds frequently, with the same sit/stand

---

[9] The ALJ's discussion preceding the analysis of Dr. Song's opinion consists of the one paragraph summarizing over three hundred pages of medical records, as mentioned earlier in this Report.

**REPORT AND RECOMMENDATION - 16**

limitations identified by Dr. Casper, who was also limited to occasional fingering and handling, could perform any work. (AR 62-63.) The vocational expert said there was not, because there is not any sedentary unskilled work without fingering and handling. (AR 63-64.)[10]

The Court simply cannot reconcile the ALJ's reasoning. There is no discussion, beyond conclusory statements, regarding why the state agency opinions were inconsistent with Petitioner's treatment history. It is perhaps clear from deductive reasoning that, by adopting, for the most part, Dr. Casper's sit/stand and lift/carry limitations, the ALJ ostensibly rejected Dr. Song's and Dr. Vestal's conflicting opinions regarding the same. But, by giving Dr. Casper's opinion great weight, yet rejecting the manipulative limitations that Drs. Song and Vestal both found supported by Dr. Casper's objective physical examination findings, the ALJ erred. In other words, Drs. Song and Vestal's findings that Petitioner had manipulative limitations is consistent with Dr. Casper's objective findings, but the ALJ gave no explanation why he failed to incorporate such limitations in the RFC. There is simply no explanation given by the ALJ for this apparent contradiction, which constitutes error.

---

[10] There was one job, but it required speaking, which was precluded due to Petitioner's vocal impairment. (AR 64.)

**REPORT AND RECOMMENDATION - 17**

## CONCLUSION

The Court concludes the ALJ erred in reconciling the various medical opinions, and provided little in the way of specific, clear and convincing reasons, other than his own conclusory statements, to assign probative weight to each of the medical opinions. Accordingly, the Court recommends the Commissioner's decision be remanded for further proceedings consistent with this Report.

**REPORT AND RECOMMENDATION - 18**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED that**

1)      Petitioner's Petition for Review (Dkt. 1) be **GRANTED**;

2)      This action be **REMANDED** to the Commissioner for further proceedings consistent with this opinion;

3)      The Remand should be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002); and

4)      A Judgment be entered consistent with the above in favor of the Petitioner.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: October 30, 2017

Honorable Candy W. Dale
United States Magistrate Judge